IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| CECIL CLAYTON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 02-MC-8001-CV-W-NKL |
| | ) | **CAPITAL CASE** |
| AL LUEBBERS, | ) | |
| Supt., Potosi Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER

Pending before the Court are three motions filed by Cecil Clayton ("Clayton"): (1)

Motion for Reconsideration of Order Denying Stay of Proceedings [Doc. # 107]; (2)

Motion to Alter or Amend the Judgment Pursuant to Rule 59(e) [Doc. # 108]; and (3)

Motion to Release Medical Records [Doc. # 114]. For the reasons set forth below, the

Court denies Clayton's Motions.

## I.      Clayton's Motion for Reconsideration of the Order Denying Stay [Doc. # 107]

In May 2006, the Court entered an Order denying Clayton's Renewed Motion for

Stay of Proceedings. *See* Stay Order [Doc. # 104]. In its Order, the Court assumed that

some standard of competency was required in a habeas proceeding, but found that such a

standard consisted of, at most, an ability to "understand the purpose of the habeas

proceeding, be able to recall and relate information relevant to a habeas petition and make

limited decisions such as filing or dismissing [a] petition." *See* Stay Order [Doc. # 104]

1

at p. 14.  Applying this standard, and based on the extensive facts contained in the

Forensic Report ("F.R."), which was prepared by Lea Ann Preston, Ph.D., a psychiatrist

for the Federal Bureau of Prisons, the Court found that Clayton was competent to proceed

with his habeas action.  The Court also found that a hearing was not necessary, given the

extensive review done by Dr. Preston and Clayton's reliance on that evaluation to support

his Motion to Stay.  In conjunction with its Order denying a stay, the Court also rejected

Clayton's request for additional funds for an expert.

> **A.     Clayton's Ability to Communicate**

Clayton now moves the Court to reconsider its Order.  Clayton first argues that the

Court's competency standard does not address a petitioner's ability to rationally

communicate with his counsel.  However, the Court found that a habeas petition must be

able to "recall and relate information relevant to a habeas petition."  The Court then

reviewed the evidence from the F.R. about Clayton's ability to communicate.  The Court

found that although Clayton's ability to communicate was diminished, it was nonetheless

sufficiently intact so that he could communicate with his counsel.

In reaching this conclusion, the Court relied on the objective test results from the

ECST-R and the notes submitted by Dr. Preston, an objective expert.  *See* Stay Order

[Doc. # 104] at pp. 15-16.  This evidence demonstrated that Clayton could communicate

with counsel, but that it took more time than normal and more patience from counsel in

obtaining the information.  Relying on *United States v. Robinson*, 404 F.3d 850 (4th Cir.

2005)--a case not addressed in Clayton's pending Motion--the Court found that

2

competency was established when counsel could obtain necessary information, even though it took more time and effort.

The unrefuted evidence in the F.R. demonstrated that Clayton had the ability to communicate, albeit that ability was diminished by his brain injury. There is no objective evidence before the Court to support the contention that Clayton is so limited in his ability to communicate that he is incompetent to participate in his habeas proceedings.

**B.      Clayton's Decision-Making Skills**

In its Order, the Court found that there are fewer opportunities in a habeas proceeding for critical decisions than there are at trial. *See* Stay Order [Doc. # 104] at p. 17. The Court also noted that there was no evidence Clayton could not make limited decisions if he had the assistance of his counsel, demonstrated by his decision to file a habeas petition.

Clayton argues that there are more decisions to make in a habeas proceeding than those identified by the Court. As an example, Clayton states, "He is entitled to advise his attorneys as to whether he . . . wants to attack guilt or punishment alone." *See* Motion [Doc. # 107] at p. 8. However, as Clayton points out, that decision has already been made since Clayton attacked both the guilt and punishment aspects of his case in his Petition. *Id.* Thus, Clayton has identified no decision that he was unable to make during his habeas petition as a result of his brain injury.

**C.      Is a Unitary Competency Standard Required?**

Finally, Clayton argues that the Court's minimal competency standard in the

3

habeas context violates "the spirit of the holding of the United States Supreme Court" in *Godinez v. Moran*, 509 U.S. 389 (1993), which held that the competency standard for pleading guilty or waiving right to counsel is the same as the competency standard for standing trial. Clayton argues that this Court's formulation of a minimal competency standard for a habeas proceeding violates the policy behind *Godinez*. Clayton's argument ignores that the Supreme Court itself delineated a separate competency standard for an inmate who is about to be executed in *Ford v. Wainwright*, 477 U.S. 399 (1986). Courts interpret *Ford* to hold that a prisoner is competent to be executed if the prisoner has the "capacity to understand the nature and the purpose of the punishment about to be imposed . . . ." *See Smith v. Armontrout*, 857 F.2d 1228, 1230 (8th Cir. 1988) (setting forth the two-part test derived from *Ford*). Thus, courts already apply different standards of competency at different stages of the proceeding.

These distinct competency standards are not surprising given that the proceedings identified in *Godinez* all arise before a defendant has been found guilty. Thus, the higher threshold of competency is required when a defendant is still entitled to a presumption of innocence. That is not the case in a habeas context, particularly in a capital habeas context such as Clayton's where his case has undergone considerable scrutiny by the Missouri courts.

### D.     Clayton's Request for a Hearing

Clayton also claims the Court erred when it did not provide him with a hearing on his competency. Clayton first argues that the Court analogized habeas competency to

4

trial competency, but that is directly refuted by the Court's Order. The Court specifically

distinguished habeas proceedings from trial proceedings and found that "any right a

habeas petitioner has to competency is narrowly circumscribed." *See* Stay Order [Doc. #

104] at p. 14. Thus, even though a hearing may be statutorily required in the trial

competency setting, that is not the case in the context of a habeas competency

determination.

Furthermore, the record shows that the facts underlying the Court's competency

decision were not disputed. The need for a hearing is particularly diminished in this

specific case. The Court relied on the objective testing and evaluations found in the F.R.

to determine that Clayton was competent to proceed. The Court did not discount or refute

any facts contained in the F.R., and Clayton did not present any evidence that

contradicted the F.R. Indeed, Clayton affirmatively relied on the F.R. to support his

request for the stay.

The only portion of the F.R. that the Court discounted was Dr. Preston's ultimate

conclusion that Clayton was likely not competent. The Court stated:

> In the preceding sentence . . . Dr. Preston qualifies her [conclusion that
> Clayton is likely not competent] by stating that Clayton's competency turns
> on the demands that are placed on him during the habeas proceeding.
> Because Dr. Preston is not a lawyer, her ultimate conclusion is limited by
> her lack of information about what Clayton would need to do to assist his
> attorney in the context of a habeas proceeding. Because Dr. Preston's
> objective observations and the tests which she reviewed show that Clayton
> is competent to proceed with his habeas corpus action, the Court is not
> persuaded by Dr. Preston's ultimate conclusion.

*See* Stay Order [Doc. # 104] at p. 18. The Court also noted that experts are not the

appropriate individuals to make the ultimate determination of competency; such a determination is reserved solely for the Court. *Id.* at pp. 18-19.

Because the Court relied on the facts contained in the F.R., and Clayton did not contest those facts or present any evidence contrary to those facts, there was no need for an evidentiary hearing.[1]

### E. Clayton's Request for Additional Funds

Clayton also requests additional funds so Dr. James Merikangas can complete his evaluation of Clayton. As outlined in the Court's Stay Order, the Court has already paid $7,500 for Dr. Merikangas's evaluation. As far as the Court can tell, this expenditure paid for a one-day evaluation of Clayton in January 2003 and a review of Clayton's medical records. Dr. Merikangas has never filed a report nor has he participated in these proceedings in any way.

Federal statute governs the allocation of funds for experts in a capital habeas proceeding. *See* 21 U.S.C. § 848(q)(9)-(10). Subsection (9) authorizes courts to allow attorneys representing habeas petitioners to secure "investigative, expert, or other services [that] are reasonably necessary." *Id.* at (9). Subsection (10)(B) governs payment for these additional services and it states:

Fees and expenses paid for investigative, expert and other reasonably

---

[1]Clayton implicitly suggests that Dr. Daniel Foster would testify on behalf of Clayton if an evidentiary hearing is permitted. However, Clayton had his opportunity to present any evidence he had from Dr. Foster in support of his Motion to Stay. He elected not to do so and, instead, relied on the Court's expert, Dr. Preston.

6

necessary services authorized under paragraph (9) shall not exceed $7,500 in any case, unless payment in excess of that limit is certified by the court . . . as necessary to provide fair compensation for services of an unusual character or duration, and the amount of the excess payment is approved by the chief judge of the circuit. The chief judge of the circuit may delegate such approval authority to an active circuit judge.

*Id.* at (10)(B).[2]

It is not "reasonably necessary" for Dr. Merikangas to conduct another round of evaluations on Clayton. Clayton did not use any of Dr. Merikangas's work to support Clayton's incompetency claim. While Dr. Merikangas did not have access to every medical test he requested, the Court is not persuaded that he could produce nothing of value for $7,500.

While it is correct that the Court initially approved a $10,000 fee for Clayton's expert witness, this approval was defective on its face because it exceeded the statutory limit and was not approved by the Chief Judge of the Eighth Circuit. Clayton's counsel was aware of the mistake before Clayton submitted his renewed motion for a stay, and Clayton has not stated that, but for the mistake, Dr. Merikangas would have issued an evaluation in support of Clayton's Motion for Stay. In fact, Clayton has stated previously that Dr. Merikangas could produce no report without an updated MRI and SPECT study. The Court has already concluded that those reports were not "reasonably needed," given the limited resources available to the Court.

---

[2]This subsection of 21 U.S.C. § 848 was repealed in March 2006. However, it was in effect when the Court declined to extend additional funds to Clayton for Dr. Merikangas's fee.

Moreover, Clayton made a tactical decision to rely on Dr. Preston's F.R. which did include a review of an MRI and SPECT. Clayton has had a fair opportunity to litigate his competency, and further expert funds and delay are not justified.

### III. Clayton's Motion to Alter or Amend Under Rule 59(e)

On the same day it issued it's Order denying Clayton's request for a stay, the Court also denied Clayton's Petition for habeas relief under 28 U.S.C. § 2254. Clayton now requests that the Court reconsider its ruling on several grounds.

Federal Rule of Civil Procedure 59(e) authorizes a moving party to file a motion to alter or amend an order. Fed. R. Civ. P. 59(e). Rule 59(e) "allows reconsideration of matters properly encompassed in a decision on the merits." *Bannister v. Armontrout*, 807 F. Supp. 516, 556 (W.D. Mo. 1991), *aff'd,* 4 F.3d 1434 (8th Cir. 1993) (citations omitted). "A motion to alter or amend under Rule 59(e) must rely on one of three major grounds: (1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct a clear error of law or prevent manifest injustice." *Bannister*, 807 F. Supp. at 556.

Clayton filed his Rule 59(e) Motion based on several grounds asserted in his original Petition. The Motion, however, does not identify new evidence or a change in controlling law or a need to correct a clear error of law or to prevent manifest injustice.

The issues raised by Clayton in his Rule 59(e) Motion have been exhaustively addressed by the Court over a long period of time, and no new substantive information is contained in Clayton's Rule 59(e) Motion. It is, therefore, denied.

8

## IV.  Conclusion

Accordingly, it is hereby

(1)     ORDERED that Clayton's Motion for Reconsideration of Order Denying

Stay of Proceedings [Doc. # 107] is DENIED;

(2)     ORDERED that Clayton's  Motion to Alter or Amend the Judgment

Pursuant to Rule 59(e) [Doc. # 108] is DENIED; and

(3)     ORDERED that Clayton's Motion to Release Medical Records [Doc. #

114] is DENIED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

DATE:  August 8, 2006
Kansas City, Missouri

9