**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| CECIL CLAYTON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:02-cv-08001-NKL |
| | ) | |
| AL LUEBBERS, Superintendent, | ) | |
| Potosi Correctional Center, | ) | |
| | ) | |
| Respondent. | | |

**ORDER**

On March 15, 2015, Plaintiff Cecil Clayton filed his Second-in-Time Federal Habeas Corpus Petition and Supplemental Petition Raising Incompetence to Be Executed Claim. [Doc. 145.] He is scheduled to be executed on March 17, 2015 at 6:00 p.m. The record is expansive and the parties' briefing detailed, including briefing filed by the parties at 3:00 p.m. on March 16, 2015, and noon on March 17, 2015 pursuant to an Order expediting briefing. [Doc. 148.] Based on the review performed in the scant time provided, the Court denies Clayton's petition.

## I. Background

Details of Clayton's state conviction, appeals, and other previous legal proceedings have been exhaustively cataloged by this Court and others. Briefly, in 1997, Clayton was convicted of first degree murder and sentenced to death by the State of Missouri. His conviction and death sentence were affirmed by the Missouri Supreme Court. *State v. Clayton*, 995 S.w.2d 468 (Mo. 1999). His motion for post-conviction

relief was overruled and affirmed by the Missouri Supreme Court. *Clayton v. State*, 63 S.W.3d 201 (Mo. 2001). In 2006, in this case, this Court denied Clayton's federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. [Doc. 105]. The Eighth Circuit Court of Appeals affirmed. *Clayton v. Roper*, 515 F.3d 784 (8th Cir. 2008).

On January 9, 2015, Clayton filed a civil rights action in district court. *Clayton v. Lombardi*, case no. 4:15-cv-4003-NKL (W.D. Mo.). On February 6, 2105, the Missouri Supreme Court scheduled Clayton's execution for March 17, 2015. On February 19, 2015, Clayton filed a motion for stay of execution in his district court civil rights case, case no. 4:15-cv-4003-NKL. [Doc. 18.] On February 24, 2015, the civil rights case was dismissed and the motion for stay denied. [Doc. 21.] Clayton filed a motion to alter or amend on March 2, 2015 and it was denied on March 9, 2015. [Doc. 27.]

Clayton filed a petition for writ of habeas corpus in the Missouri Supreme Court on March 10, 2015, claiming under *Ford v. Wainwright*, 477 U.S. 399 (1986), *Panetti v. Quarterman*, 551 U.S. 930 (2007), *Atkins v. Virginia*, 536 U.S. 304 (2002), and Mo. Rev. Stat. § 552.060.1 (2000), that he is not competent to be executed. *State ex rel. Clayton v. Griffith*, no. SC94841. The Missouri Supreme Court denied his petition on March 14, 2015.

Clayton now petitions this Court pursuant to 28 U.S.C. § 2254, claiming he is not competent to be executed under *Ford* and *Panetti*. He also claims he cannot be executed because he is intellectually disabled under *Atkins*.

## II. Discussion

Under 28 U.S.C. § 2254, this Court cannot grant habeas relief on any claim that was adjudicated on the merits in state court unless the decision: (1) was "contrary to…clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application" of clearly established Federal law, or (3) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(1)–(3).

A state court decision is contrary to the United States Supreme Court's clearly established precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 404–06 (2000) (O'Connor, J. concurring); *Colvin v. Taylor*, 324 F.3d 583, 587 (8th Cir. 2003). "Clearly established federal law 'is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'" *Wright v. Bowersox*, 720 F.3d 979, 985 (8th Cir. 2013) (quoting *Lockyer v. Andrade*, 638 U.S. 63, 71 (2003)).

A state court unreasonably applies clearly established Supreme Court precedent if it correctly identifies the governing principles but unreasonably applies it to the facts of a particular case. *Colvin*, 324 F.3d at 587. In reviewing whether the state court's decision involved an unreasonable application, this Court "examines the ultimate legal conclusion reached by the court not merely the statement of reasons explaining the state court's

decision." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (citation omitted). "[A]n unreasonable application is different from an incorrect one." *Colvin*, 324 F.3d at 587. A federal court cannot grant a writ even if it disagrees with the state court decisions, as long as the state court decision is reasonable in view of all the circumstance. *Id.*

Factual determinations made by state courts are presumed correct and a petitioner bears the burden of rebutting the presumption by clear and convincing evidence. *Nicklasson v. Roper*, 491 F.3d 830, 834 (8th Cir. 2007); *see also* § 2254(e)(1). A factual determination is not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The existence of some contrary evidence in the record does not suffice to show that the state court's factual determination was unreasonable. *Id*. at 302.

The issues presented by Clayton are legally close in some respects, some of his facts are unique, and this Court would have reached a different conclusion than the Missouri Supreme Court. That the Missouri Supreme Court's 35-page decision represented a 4-3 split, with a vigorous, reasoned, 12-page dissent filed, highlights the difficulty of the issues here. Nevertheless, in the time available, the Court cannot conclude under the deferential AEDPA standards that the decision was contrary to clearly established Federal law, as determined by the United States Supreme Court; involved an unreasonable application of clearly established Federal law; or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The Court notes that the question of whether the death penalty can be imposed upon a person with physical brain damage—a hole in his frontal lobe—asssociated with progressive deterioration over time, has not been litigated here. *Ford* and *Panetti* provide, "[T]he Eighth Amendment prohibits a State from carrying out a sentence of death upon a prisoner who is insane." *Ford*, 477 U.S. at 409-10; *see also Panetti*, 551 U.S. at 934. This constitutional protection "prohibits execution of one whose mental illness prevents him from comprehending the reasons for the penalty or its implications…[or is] unaware of the punishment they are about to suffer and why they are to suffer it." *Panetti*, 551 U.S. at 957 (quotation marks and citations omitted). Earlier findings of competency "do not foreclose a prisoner from proving he is incompetent to be executed because of his present mental condition." *Id.* at 934. Under *Ford*, a prisoner who makes "a substantial threshold showing of insanity" is entitled to an adjudication to determine competence. *Id.* at 949 (citing *Ford*, 477 U.S. at 426).

The Eighth Amendment likewise prohibits execution of the mentally retarded:

> [C]linical definitions of mental retardation require not only subaverage intellectual functioning, but also significant limitations in adaptive skills such as communication, self-care, and self-direction that became manifest before age 18. Mentally retarded persons frequently know the difference between right and wrong and are competent to stand trial. Because of their impairments, however, by definition they have diminished capacities to understand and process information, to communicate, to abstract from mistakes and learn from experience, to engage in logical reasoning, to control impulses, and to understand the reactions of others. …Their deficiencies do not warrant exemption from criminal sanctions, but they do diminish their personal culpability.

*Atkins,* 536 U.S. at 318. The "lesser culpability of the mentally retarded offender surely does not merit that form of retribution." *Id.* at 319. As for deterrence, "[e]xempting the mentally retarded from [the death penalty] will not affect the cold calculus that precedes the decision of other potential murderers." *Id.* (quotation marks and citation omitted). Further, "the same cognitive and behavioral impairments that make these defendants less morally culpable—for example, the diminished ability to understand and process information, to learn from experience, to engage in logical reasoning, to control impulses—[ ] make it less likely that they can process the information of the possibility of execution as a penalty and, as a result, control their conduct based upon that information." *Id.* at 320. As was its approach in *Ford*, the Supreme Court in *Atkins* left to the states the task of developing how to appropriately enforce the constitutional restrictions on executions. *Id.* at 317.

In Clayton's first habeas, the Court denied his claim, under *Atkins*, that he was mentally retarded at the time of the murder. Clayton's second petition[1] cites evidence of his physical brain damage, and progression of his dementia and decline in functioning after the first habeas. Clayton provides, for example, Dr. Foster's 2013 report that Clayton's dementia and deterioration had progressed by the time the doctor reassessed him in 2008 and that Clayton's "deterioration the past five years has further lessened his capacity for meaningful participation in his legal proceedings." [Doc. 145, p. 27.]

[1] The Court cannot consider the same claim again in a petition for writ of habeas corpus, because second or successive claims must be dismissed. 28 U.S.C. § 2254(b)(1). Clayton's second petition cites evidence of the progression of his dementia and his decline after the first habeas, and the Court assumes, without deciding, that the second petition is not a second or successive claim under § 2254(b)(1).

Clayton also cites expert opinions that he is psychotic and paranoid, and has memory loss and thought disorganization. Experts also noted that he periodically hears Satan's voice, and believes his conviction was a result of conspiracy of the legal system against him. [Doc. 145, pp. 24-25.]

The difficulty here is that under these unique facts, resolution of Clayton's claims may lie somewhere between *Atkins*, and *Ford* and *Panetti*. The Court in 2006 rejected Clayton's *Atkins* claim. Yet his failure to demonstrate mental retardation, a developmental disability, seems a separate matter from evidence of his physical brain damage and progression of his dementia and decline in functioning. The Missouri Supreme Court's rejection of evidence of Clayton's deterioration since the 2006 federal habeas, as not probative of his incompetence, helps illustrate the difficulty:

> [T]he issue is not whether Clayton is competent in the sense of whether he can care for himself, or even whether Clayton suffers from deficits in comprehension, judgment, memory or intelligence. The issue is whether Clayton can comprehend the reasons for his death sentence and its implications. *Panetti*, 551 U.S. at 957. Put another way, the issue is whether Clayton has a rational understanding of the punishment he is about to suffer and why he is to suffer it. *Id.* This is because the Eighth Amendment only prohibits Clayton's execution if he suffers from gross delusions that impair his "concept of reality [such] that he cannot reach a rational understanding of the reason for the execution." *Id.* at 958.

[Doc. 149, Exh. X, p. 21.]

Should *Ford* and *Panetti* be applied in the same way to all persons?

Should the *Atkins* reasoning be applied, by analogy, to cases involving persons with physical brain damage and progressive deterioration, and an *Atkins*-like evaluation

performed to determine whether the death penalty may be properly imposed? It seems fair to analogize the diminished capacity of the mentally retarded that lessens personal culpability and prohibits execution of the mentally retarded, *Atkins,* 536 U.S. at 318-19, to those whose physical brain damage and progressive deterioration have, for example, lessened their capacity to meaningfully participate in legal proceedings. Using a different analogy, it would be difficult to imagine, for example, that a civilized society would execute a person who was not mentally retarded at the time of the commission of a capital crime, but who subsequently developed advanced Alzheimer's disease by the time of the execution.

Again, at this very late date, the question of whether the death penalty can be imposed against a person such as Clayton with physical brain damage—a hole in his frontal lobe—associated with progressive deterioration over time, has not been litigated here, and it may be too late. In the time available, the Court cannot conclude under the deferential AEDPA standard that the Missouri Supreme Court's decision should be disturbed.

Petitioner Clayton's Second-in-Time Federal Habeas Corpus Petition and Supplemental Petition Raising Incompetence to Be Executed Claim [Doc. 145] is denied.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: March 17, 2015
Jefferson City, Missouri